**Robert Lee FRAZIER, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–78–130.**

Court of Criminal Appeals of Oklahoma.

Feb. 20, 1980.

Frank H. McCarthy, Asst. Public Defender, Tulsa, for appellant.

Larry Derryberry, Atty. Gen., William S. Flanagan, Asst. Atty. Gen., for appellee.

## OPINION

CORNISH, Presiding Judge:

Robert Lee Frazier was convicted of Murder in the First Degree in the District Court of Tulsa County, Oklahoma, Case No. CRF–77–987, and sentenced to life imprisonment.

Mary Livingston was fatally shot in the chest on the evening of April 19, 1977, in the Tulsa residence where she resided with her daughter, granddaughter and the appellant. The appellant testified that the shotgun, with which the victim was fatally wounded, accidentally discharged when the victim reached for the weapon during a heated argument. Later, the appellant turned himself in at police headquarters. He signed a written confession and stated he wanted a speedy trial and the death penalty.

On appeal, he asserts the trial court erred in denying his request for a mental examination to determine his present sanity. This complaint is premised on 22 O.S.1971, § 1171, which provides that where a doubt arises as to a criminal defendant's sanity either the individual or the District Attorney may make application to the District Court for an order committing such individual to a state mental hospital for determination of the issue. He argues that his conduct in trying to dismiss his attorney, and his vascillation between the desire to plead guilty and accept the death penalty, support his allegation of insanity.

■ The record does not support this claim. Pursuant to the court's order, an osteopathic physician examined the appellant. The doctor testified that in his opinion the appellant was competent to assist counsel in his defense and that he knew the difference between right and wrong.

The trial judge, in denying the request for mental examination, stated that if a conviction was had, the court would permit a hearing on the issue before entering judgment and sentence. A review of the record shows that the appellant's testimony was clear and rational. The trial court had ample opportunity to personally observe the demeanor of the appellant and evaluate his condition both during the trial and prior to sentencing. We do not feel the evidence was sufficient to create in the trial judge's mind a legal doubt of the appellant's sanity. See *Reynolds v. State*, Okl.Cr., 575 P.2d 628 (1978); *Wimberli v. State*, Okl.Cr., 536 P.2d

945 (1975). Finding no abuse of discretion, such a ruling will not be disturbed on appeal. *Haynes v. State*, Okl.Cr., 473 P.2d 299 (1970).

Next, it is argued that the prosecutor committed reversible error by misstating the law in closing argument, as follows:

"MR. HOPPER: A domestic argument where the man of the house killed the woman of the house in the heat of passion. Well, ladies and gentlemen, under the laws of the State of Oklahoma, there is nothing to preclude a person who does a dastardly act in the heat of passion from having a premeditated design.

"MR. HOFFMAN: Your Honor, I'll object to that. That is clearly not the law. The heat of passion is a specific legal term. There is a difference between premeditated design and heat of passion. That is the law.

"THE COURT: I'll let Mr. Hopper—I'll give fair latitude on his argument."

■ The rule is well settled in Oklahoma that a prosecuting attorney should not assume the function of the court and declare the law to the jury to the prejudice of the defendant. *Hau v. State*, 30 Okl.Cr. 24, 234 P. 649 (1925).[1] However, as held in *Battle v. State*, Okl.Cr., 478 P.2d 1005 (1970), the right of argument contemplates a liberal freedom of speech and the range of discussion, illustration and argumentation is wide. Counsel for both the State and the appellant have a right to discuss fully from their standpoints the evidence and the inferences and deductions arising therefrom. Only when argument by counsel for the State is grossly improper and unwarranted upon some point which may affect the appellant's rights can a reversal for improper argument be justified. See *Deason v. State*, Okl.Cr., 576 P.2d 778 (1978).

■ Here, it cannot be said that the jury was provided with an erroneous construction of the applicable law. Clarity of the Court's instructions No. 3 and 4, defining the terms "premeditation" and "heat of passion" as they relate to Murder in the First Degree and Manslaughter in the First Degree, respectively, is self-evident. See 21 O.S.Supp.1976, § 701.7 and 21 O.S.1971, § 711. The judge's instructions contained all the law to be applied and are legally correct.

The most meritorious argument for reversal is the appellant's contention that the trial court erred by allowing rebuttal testimony to contradict his testimony on a collateral matter. For a determination of this issue, a consideration of the testimony of several witnesses is necessary.

The victim's granddaughter testified that she was present during a part of the argument between the victim and the appellant; that she saw the appellant raise the shotgun and make the statement, "I'll go to jail for murder." During cross-examination, the appellant testified that the foregoing statement was made three years prior to the homicide and that it related to an incident between the appellant and the victim's brother, Roy Walker. On redirect, the defense sought to have the appellant explain the circumstances surrounding the incident with Roy Walker, to show that the granddaughter was mistaken as to the date the statement was made. Thereafter, over defense counsel's objection, the State produced rebuttal witness, Charlene Walker, wife of Roy Walker, to rebut the appellant's version of the encounter with Roy Walker three years earlier.

Mrs. Walker testified that she and her husband initially went to Mary Livingston's home to see if the house had heat. Charlene Walker related that on that occasion the appellant verbally cursed and abused

---

1. *Hau v. State*, 30 Okl.Cr. 24, 234 P. 649 (1925), involved a misstatement of law as to the shifting of the burden of proof. The court indicated that the prosecutor's argument of law to the jury over defense counsel's objection did not constitute reversible error unless prejudice to the accused's substantial rights resulted.

See Also: Annot. "Counsel's Right in Criminal Prosecution to Argue Law or to Read Lawbooks to the Jury," 67 A.L.R.2d 245, 276 (1959).

her husband and threatened to kill him. She also said the appellant had a weapon in his possession at that time.

The record reflects that Mrs. Walker's testimony was not concerned with the statement, "I'll go to jail for murder," or when it was made. In this appeal, it is urged, her testimony was collateral to the offense charged and used to impeach the appellant's credibility and character and to portray him as a man who would lie to the jury and commit the homicide charged.

In support of his position that the trial court erred in admitting this rebuttal evidence contradicting the appellant's testimony on a collateral matter, the appellant relies on *Robison v. State*, Okl.Cr., 430 P.2d 814, 817 (1967), and *Brown v. State*, Okl.Cr., 487 P.2d 963 (1971).

In *Robison v. State*, supra, after placing before the jury a portion of the defendant's medical record, the closing argument of the prosecutor emphasized the discrepancy between the record and the earlier testimony by the defendant on cross-examination. This was done in an effort to destroy the credibility of the defendant. We there held that the trial court erred in admitting the portion of the medical record which was read to the jury because it related only to collateral matters and failed to prove or disprove facts material to the guilt or innocence of the particular offense charged. This Court stated therein:

". . . It is a well recognized principle of law that it is error to admit rebuttal evidence contradicting the testimony of a defendant on a collateral issue and whether such error requires a reversal must be determined on the basis of the entire record. . . ."

■ The State urges that the rebuttal evidence herein was not collateral, but instead went to the central issue of the case as proof of premeditation or lack of malice or design to effect the victim's death. Whether the matter inquired of was collateral must be determined by the inquiry set forth in *Brown v. State*, supra, quoting from *Payne v. State*, 10 Okl.Cr. 314, 136 P. 201 (1913): "Would the prosecuting attorney have been permitted to introduce it in evidence as part of the state's case? If he would not, it was collateral." We think this evidence was collateral to the offense charged and, in fact, concerned evidence of unrelated offenses.

■ Admittedly, the admission of such rebuttal evidence and references to it in closing argument could prejudicially influence a jury in a close case. However, whether this requires a reversal must be determined on the basis of the entire record. *Robison v. State*, supra. From a careful review of the record before us, we conclude the jury would not have found the State's case significantly less persuasive had the rebuttal evidence been excluded. Unless there is a reasonable possibility that the improperly admitted evidence contributed to the conviction, reversal is not required. See *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967).

■ In view of the overwhelming evidence of the appellant's guilt, as manifested by his written confession, which comported with the objective evidence, and the relatively insignificant prejudicial impact of the rebuttal evidence, we hold the admission into evidence of these statements was at most harmless error. See *Schneble v. Florida*, 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972); and *Harrington v. California*, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969). The conviction is, therefore, *AFFIRMED.*

BRETT and BUSSEY, JJ., concur.