Floyd SPIVA, Jr., and Gerald Martin, Appellants,

v.

The STATE of Oklahoma, Appellee.

Nos. M–77–232, M–77–233.

Court of Criminal Appeals of Oklahoma.

Sept. 19, 1978.

Michael G. Winchell, Sokolosky & Becker, Oklahoma City, for appellants.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Duane N. Rasmussen, Legal Intern, for appellee.

## OPINION

PER CURIAM:

Floyd Spiva, Jr., and Gerald Martin, hereinafter referred to as defendants, were charged, tried, and convicted in the District Court, Oklahoma County, Cases No. CRM–76–3251 and CRM–76–3262, of the offense of Unlawful Possession of Dental Equipment, to wit, Two Dental Chairs, in violation of 59 O.S.1971, § 328.39. From that conviction and a One Thousand ($1,000.00) Dollar fine, the defendants have appealed to this Court.

It is the opinion of this Court that the State failed to establish essential ele-

ments of the crime charged. Title 59 O.S. 1971, § 328.39, provides in part that:

"It shall be unlawful for any dental laboratory or dental laboratory technician to:

\*　　\*　　\*　　\*　　\*　　\*

(k) have on its premises or in its possession dental equipment not necessary for the conduct of a dental laboratory's function; . . ."

It is necessary for the State to prove first that the persons charged are a dental laboratory or are dental laboratory technicians and second that the equipment which they are charged with possessing is "dental equipment not necessary for the conduct of a dental laboratory's function." With regard to the first element, we hold that the State did not prove that the defendants operated a dental laboratory or were dental laboratory technicians. Except for some inadmissible hearsay evidence by Robert Busch, an investigator for the Board of Governors of Registered Dentists in the State of Oklahoma, who admitted that he was not the keeper of records of registered dental laboratories, the only evidence regarding whether the defendants operated a dental laboratory was a 1975 application for an annual permit to operate a dental laboratory in the State of Oklahoma. The name and address of the laboratory listed on the application differed from the name and address of the laboratory which was raided, but the application listed as technicians the two defendants. Title 59 O.S. 1971, § 328.35, defines a dental laboratory as:

"[A]n establishment, the name and location of which is duly filed in the official records of the Board of Governors, where a dental laboratory technician offers or undertakes to perform the services of a dental laboratory technician as described below. It further means any place or space equipped with dental laboratory benches, cabinets, motors, furnaces, materials and other mechanical and laboratory equipment that is considered necessary for the completion of the services ren-

dered in a dental laboratory. A dental laboratory technician is any person whose name is duly filed in the official records of the Board of Governors, who may, only upon the specific written work authorization of a licensed dentist and by using inert materials and mechanical device, make, produce, reproduce, construct, furnish, supply, alter or repair for the licensed dentist any prosthetic denture, bridge, appliance or thing to be used in, upon or in connection with any human tooth, jaw or associated structure or tissue of the human mouth, or in the treatment of any condition thereof."

The application signed by the wife of one of the defendants is not proof that the equipment was found in an "establishment, the name and location of which is duly filed in the official records of the Board of Governors." Furthermore, there was absolutely no proof that either of the defendants was a laboratory technician whose name was duly filed in the official records of the Board of Governors. Despite Investigator Busch's testimony that recited that he had been in a dentist's office to have a tooth extracted and that the office from which the chairs were confiscated looked the same as a dentist's office, except there was no spit bowl attached to the chair and there were no had tools in sight, he was not an expert witness competent to say that the building from which the chairs were confiscated was "equipped with dental laboratory benches, cabinets, motors, furnaces, materials and other mechanical and laboratory equipment that is considered necessary for the completion of the services rendered in a dental laboratory." Therefore, this Court agrees with the defendants that the State failed to establish that the defendants operated a dental laboratory or were dental laboratory technicians.

█ It is further the opinion of this Court that the State failed to establish that the chairs confiscated were "dental equipment not necessary for the conduct of a dental laboratory's function." No picture

of the chairs in question was submitted to the jury; nor were they shown the actual chairs. As we stated above, Investigator Busch was not an expert witness competent to conclude that the chairs came under the definition in the statute. Busch testified that the chairs were of "such shape and form and type, controlable (sic) to reduce the person's normal sitting level to a reclining level so that a person may work over them for a period of time without fatigue." There was no spit bowl or hand tools attached to the chair, although there was a light, which may or may not have been attached to the chair. Busch admitted that he was unqualified to define what constituted dental equipment but said the chair looked like one he had seen in a catalog of dental equipment. He further said that the chair reclined and had foot pedals such as might be found on a barber chair, optometrist chair or a beauty shop chair.

■ The Uniform Commercial Code financing statement filed on April 30, 1971, which recited that Capital Services, Inc., No. 17, had a security interest in household goods and appliances, 1968 Chevrolet and dental equipment owned by Floyd Spiva, Jr., was no more probative that the chairs in question were dental equipment not necessary for the conduct of a dental laboratory's function than it was that the chairs were household goods and appliances or a 1968 Chevrolet. Therefore, nothing in the State's case showed that the chairs were dental equipment not necessary for the conduct of a dental laboratory's function.

The defendant's only witness was Silas W. Grove, a dental technician, who testified that the chairs were what were known as dental chairs. He further testified that he could not think of anything which was used in a dental laboratory which would not also be considered dental equipment and that there was no piece of equipment that he could think of which was absolutely necessary to a dental laboratory, i. e., which could not have some other piece of equipment substituted for it. He did testify that

a dental chair was not a necessary piece of equipment in a dental laboratory.

It appears to this Court that the State put on no evidence which would show that the chairs were "dental equipment," and that the defense witness' statement that the chairs were dental chairs is not dispositive of the issue. Therefore, we hold that the State did not prove that the chairs in question were "dental equipment not necessary for the conduct of a dental laboratory's function."

Furthermore, it appears to this Court that "dental equipment not necessary for the conduct of a dental laboratory's function" is a categorization which is so vague as to be nearly meaningless. The State's witness admitted that he had no definition for the term, and the testimony of the defense's expert witness was that there was no dental equipment which was absolutely necessary for the conduct of a dental laboratory's function. Further, the defense's expert witness testified that he could think of no equipment which was used in a dental laboratory which could not also be used in a dental office.

■ The State attempted to prove that the chairs in question were dental equipment by describing their purported use. If mere possession constitutes a crime, the use cannot be the determining factor in the categorization of the equipment. For example, if a dental laboratory technician filled a tooth while the patient was lying on a couch, by extending the State's reasoning, it would be illegal for the dental laboratory technician to possess the couch.

In *Bristow v. State,* 67 Okl.Cr. 355, 94 P.2d 254, 258 (1939), this Court stated:

"In *Cude v. State,* 42 Okl.Cr. 357, 276 P. 240, in the first paragraph of the syllabus, this court said: 'To sustain a conviction, it should appear not only that the offense was committed, but the evidence inculpating the defendant should do so to a degree of certainty, transcending mere probability or strong suspicion.'

\*    \*    \*    \*    \*    \*

"It is seldom that this court feels it to be its duty to reverse the ruling of the trial court, and to set aside a verdict for the want of sufficient legal evidence to sustain it; but when as in this case, it is manifest that the verdict is clearly contrary to the evidence, and the judgment is wrong and should not be allowed to stand, we have no discretion in the matter, and must reverse the decision of the trial court."

It would appear from the evidence offered, had the charge been laid under the provisions governing the illegal practice of dentistry, that the State may have sufficiently sustained such a charge. However, the instant matter is hereby laid to rest. See, *Burks v. United States,* —— U.S. ——, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978). That the State has a valid interest in matters which affect the public health, safety and general welfare is undisputed, and the Oklahoma Supreme Court has held that the work of dental laboratory technicians bears a sufficient relation to public health and welfare as to be regulable. See, *Board of Governors of Reg. Dentists of Okl. v. Burk,* Okl., 551 P.2d 1122 (1976), *Thrasher v. Board of Governors,* Okl., 359 P.2d 717 (1961). The purported purpose of the statute is to protect public health by prohibiting the unauthorized and/or incompetent practice of dentistry.

Although the error was not raised by counsel for the defendant and although it is not necessary for our decision in this case, we should point out that the admission of a photograph of the Oklahoma Association of Denturists, Inc., exhibit at the State Fair and of a copy of a denturism lobbying pamphlet was at best irrelevant to the case at bar and at worst exceedingly prejudicial to the defendants. Organizing to promote the passage of legislation is not a crime.

For the above and foregoing reasons, this case is *REVERSED.*

BUSSEY, P. J., not participating.